UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────────

UNITED STATES OF AMERICA                    06 Cr. 1126 (SCR)

                                                                                                  **MEMORANDUM DECISION**
                                                                                                           **AND ORDER.**

         **v.**


GEORGE FENNELL
───────────────────────────────────────

**STEPHEN C. ROBINSON, United States District Judge:**

      Defendant George Fennell, who is charged with possession with intent to distribute "crack" filed various pre-trial motions. Defendant's motions are discussed below.

**A. Suppression of Physical Evidence**

      Defendant moves to suppress evidence seized at his residence on the grounds that the warrant improperly relied on the statements of Defendant's minor nephew when he was questioned by law enforcement, and that the warrant was not sufficiently particular. Defendant's motion to suppress is denied.

**1. Probable Cause**

      As an initial matter, Defendant alleges that the statement by his nephew was coerced. Defendant has not put forth any evidence indicating that the statements taken by the police were coerced, other than an affidavit by defendant's nephew.[1] The police officers in question credibly testified that the statements in question were made voluntarily and were not coerced, and without the benefit of cross-examination of defendant's nephew on the contents of his affidavit, the Court credits the testimony of the officers. Accordingly, the Court finds that the statements by defendant's nephew were not coerced and therefore properly supported the search warrant in this case.

      Moreover, the Court notes that the warrant in this case was also based on information provided by a reliable confidential informant, who had previously provided information to the police for at least five years and that his information had led to at least 30 arrests for drug possession and possession of illegal firearms. The informant's

---

[1] Testimony by defendant's mother that defendant's nephew was questioned outside the presence of his guardians does not support defendant's position that these statements were coerced. The minor was complaining of abuse and it was reasonable for the police to question him about this complaint – including whether minor children were being used in narcotics distribution – outside the presence of his guardians.

1

testimony was also corroborated by information provided by defendant's nephew, and additional records searches conducted by the police. Accordingly, the informant's testimony provides an independent basis for a finding of probable cause to support the search warrant. *United States v. Wagner*, 989 F.2d 69, 72-73 (2d Cir. 1993)("Information may be sufficiently reliable to support a probable cause finding if the [informant] providing the information has a track record of providing reliable information, or if it is corroborated in material respects by independent evidence."); *United States v. Robinson*, No. 05 Cr. 322, 2006 U.S. Dist. LEXIS 83981, *11 (N.D.N.Y. November 17, 2006).

**2. Particularity**

Defendant also moves to suppress evidence seized on the grounds that the warrant in question improperly identified his residence as a single-family residence when in fact it was a multi-family dwelling. Defendant's motion to suppress on this basis is denied.

"The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one particularly describing the place to be searched and the persons or things to be seized." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). The purpose of the particularity requirement was to prevent general searches. *Id.* "The requirement ensures that [a] search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Id.*

The existence of a multiple occupancy dwelling violates the particularity requirement, if the agents had known, or should have known, that there were two separate dwelling units at the premises. *Id.* at 85. Courts should judge the constitutionality of the conduct of law enforcement "in light of the information available to them at the time they acted." *Id.* As a general matter, however, courts are instructed to view the warrants in a practical, rather than technical way. *See United States v. Dorsey*, 591 F.2d 922, 929 (D.C. Cir. 1978). Indicia of a separate residence include separate entrances, separate doorbells, separate house numbers, name plates, and mail boxes. *See, e.g.*, *United States v. Kyles*, 40 F.3d 519, 524 (2d Cir. 1994); *United States v. Maneti*, 781 F. Supp. 169, 181 (N.D.N.Y. 1991); s*ee also Birthwright v. City of New York,* 01 Civ. 3940, 2005 U.S. Dist. LEXIS 19787, * (S.D.N.Y. September 8, 2005)(in a § 1983 action, search by law enforcement held reasonable where there were no indications of multiple occupancy: "no separate doorbells, only one mailbox, one entrance, no intercom system, no name plates, and no apartment numbers").

Here, law enforcement acted reasonably in initially concluding that the residence in question was a single family dwelling. Defendant's nephew, who had indicated that he had been at the premises recently, told law enforcement that defendant conducted his activities at 294 First Street, and provided no indication that that structure was anything more than a single-family residence. (Tr: 45-46)[2] In addition, Lt. Centamore credibly

---

[2] "Tr:" refers to the transcript of the evidentiary hearing held before the Court on June 11, 2007. "GX" refers to government exhibits introduced at the hearing. "DX" refers to defense exhibits introduced at the hearing.

2

testified that he was told by his confidential informant, whose reliability has already been discussed, that the premises was a single family home. (Tr: 98-99) Lt. Centamore also testified that he performed a records search in order to corroborate this information. The information he obtained indicated that defendant lived at 294 First Street, and did not indicate a unit number. (Tr: 96-97; GX 93) In addition, DMV records indicated that defendant's car was registered to 294 First Street, without reference to a unit number. (Tr: 100; GX 94) In addition, Lt. Centamore asked another officer to drive past the residence to get a description of the premises. That officer did not provide any indication that the residence was anything other than a single-family house.[3] (Tr: 101) The Court notes, for example, that the house only had one number, "294", and one main entrance, and did not have multiple nameplates or mailboxes in the exterior. (GX 1; GX 9)

Defendant argues that Lt. Centamore previously executed a search warrant on the "second floor apartment" of 294 First Street in January 2003, and thus, when executing the current warrant in August 2006, the police should have known that the premises was a multi-family residence. This argument fails. There is no indication that the officers here could have searched for the January 2003 warrant when conducting their inquiry for the August 2006 warrant as there is no internal database of prior warrants available to the Newburgh police. Nor does this Court fault Lt. Centamore for not remembering a warrant he executed more than three years earlier, given that he testified that he has sworn out more than 2000 warrants in his career, including at least 150 between January 2003 and August 2006. (Tr: 108)

In addition, Defendant argues that the officers should have checked utility records and records on file with the Newburgh Code Compliance Department, which would have indicated that the residence was a two-family dwelling. This argument fails as well. Law enforcement are not required to check utility records before conducting a search. To hold otherwise "would in essence place upon law enforcement agents the requirement of checking with the utility companies in every case." *Maneti*, 781 F. Supp. at 182. "The Court rejects defendant's attempts to impose upon the Government a checklist that must be adhered to in all investigations." *Id.* Rather, the reasonableness of law enforcement's total inquiry is at issue, and the Court holds that the officers in this case conducted a reasonable inquiry before determining that the premises was a single-family residence.

---

[3] The defense did present evidence at the hearing which indicated external indicia of a multi-family dwelling, including two doorbells at the door and two utility meters. However, the doorbells are small and not obvious in the photograph taken from the street and introduced by the defense. (DX B). In addition, the two utility meters are in a narrow alley between the premises and the adjacent house, and a second utility meter would not have been obvious to an observer from the street given the angle at which the utility meters appear to be visible. (DX B; GX 1).

Nor does the Court fault law enforcement for not walking onto the premises to determine whether there were two utility meters or doorbells because other factors indicated that the premises was a single family residence, such as a single a house number and the records searches discussed already. In addition, it was reasonable for law enforcement to decline to walk onto the premises, as it might have revealed to those inside that the premises was under surveillance.

Finally, although officers should limit their search to the premises of the suspect if they if they have reason to believe that their warrant describes a multi-family dwelling, *see Kyles*, 40 F.3d at 531, the officers here acted reasonably in conducting their search. As discussed already, it was not obvious to an observer that there were two utility meters or doorbells from the street. In addition, it is apparent from photographs provided to the court that the two doorbells are even more obscured once the front door to the premises is opened. The detectives who testified at the evidentiary hearing credibly testified that they did not see the two utility meters or two doorbell when they executed to warrant. (Tr: 15, 56, 103) In addition, while there were two mailboxes in the interior of the house, it would not have been obvious to law enforcement that the second mailbox was in use given that it was closed with masking tape and a padlock. (DX F). Nor was there any other indication that the residence was a multi-family home that law enforcement should have recognized once they entered the premises. The interior "apartments" did not have separate entrances or unit numbers and the rooms in the house were separated by "internal" doors, rather than doors with bolt locks and peep holes typically found in the exterior of a living unit. (Tr: 19, 63, 168, 231), and persons living in any of the "apartments" would have had open access to the other "apartments" in the residence. (Tr: 62, 106, 229-230) Finally, none of the detectives who testified heard defendant or anyone else indicate that the residence was a multi-family unit while they were executing the warrant. (Tr: 7, 57-58, 104-05).

In sum, both in obtaining and executing the warrant, law enforcement acted reasonably in concluding that the premises was a single-family residence. Accordingly, defendant's motion to suppress physical evidence seized is denied.

### B. Suppression of Statements.

Because this Court finds that the search warrant in this case was properly obtained and was sufficiently particular, defendant's motion to suppress his post-arrest statements as "fruit of the poisonous tree" is also denied.

### C. *Brady* Material

Defendant seeks production of exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). Because the government has, in good faith, indicated that it is aware of its obligations under *Brady*, that it will comply with such obligations, and that it is not currently aware of any such material, the government has currently met its obligations. *United States v. Perez* 940 F.Supp. 540, 553 (S.D.N.Y. 1996). Defendant's motion is therefore denied.

### D. List of Witnesses

Defendant seeks a list of witnesses, as well as additional personal information regarding such witnesses. "In the absence of a specific showing that disclosure [of a witness list] was both material to the preparation of [the] defense and reasonable in light of the circumstances surrounding [the] case", the request for a witness list should be

denied.  *United States v. Bejasa*, 904 F.2d 137, 139-140 (2d Cir. 1990)(quoting *United States v. Cannone*, 528 F.2d 296, 301 (2d Cir. 1975); *United States v. James*, No. Cr. 02-778, 2005 U.S. Dist. LEXIS 40695, *17 (E.D.N.Y. December 6. 2005)("[G]enerally the Second Circuit has held that such material will be ordered disclosed to the defense only where there has been a particularized showing of need.")  Defendant here makes no particularized showing that the requested witness list is material to the preparation of the defense.  Defendant's request is therefore denied.

### E.  Jencks Act Material

With respect to prior statements of witnesses, the government is under no obligation to produce this *Jencks Act* material until after a witness has testified on direct examination at trial.  18 U.S.C. § 3500(a).  District courts lack authority to compel early disclosure.  *In re United States*, 834 F.2d 283, 287 (1987).  Defendant's motion to compel disclosure of *Jencks Act* material is therefore denied.

### F.  *Giglio* Material

With respect to Defendant's motion for early disclosure of impeachment material under *Giglio v. United States*, 450 U.S. 150 (1972), the government is only required to produce *Giglio* material "in time for effective use at trial."  *Perez*, 940 F. Supp. at 553.  The government has represented it plans to produce *Giglio* and 3500 material on the day before the corresponding witness is scheduled to testify, or earlier should additional time be necessary.  The Court is confident that the government will produce *Giglio* material in time for effective use at trial, and Defendant's motion is therefore denied.  Defendant may raise the issue of timing for discovery of *Giglio* material again as a trial date approaches.

### G.  404(b) Material

Defendant requests disclosure of evidence the government will seek to admit under Rule 404(b).  Rule 404(b) only requires "reasonable notice in advance of trial" for the admission of prior convictions and bad acts.  The rule establishes no minimum time, however, because "the evidence the government wishes to offer may well change as the proof and possible defenses crystallize."  *United States v. Matos-Peralta*, 691 F. Supp. 780, 791 (S.D.N.Y. 1988).  The government has in good faith noted its obligations under Rule 404(b), and indicated that it intends to provide notice of the 404(b) evidence it intends to introduce two weeks before the beginning of trial.  There is therefore no need to issue the order Defendant seeks.  *United States v. Ramirez*, No. Cr. 91-493, 1991 U.S. Dist. LEXIS 12183, *4 (S.D.N.Y. August 30, 1991)("The government has represented that it will provide timely notice of any intent to introduce [404(b)] evidence so that there is no need to issue the order defendant seeks.").  Defendant's motion is therefore denied.

### H.  Bill of Particulars

Defendant seeks a bill of particulars. Defendant's motion is denied.

The decision to grant a bill of particulars is left to the discretion of the trial court. *United States v. Salazar*, 485 F.2d 1272, 1278 (2d Cir. 1973); *Perez*, 940 F. Supp. at 550. A bill of particulars is not an investigative tool, or a tool of discovery, but rather "is meant to apprise the defendant of the essential facts of a crime and should be required only where the charges of an indictment are so general that they do not advise a defendant of the specific acts of which he is accused." *Perez*, 940 F. Supp. at 550 (citing cases); *United States v. Mitlof*, 165 F. Supp.2d at 558, 569 (S.D.N.Y. 2001). "The ultimate test must be whether the information sought is necessary, not whether it is helpful" and therefore "[t]he Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crime charged, or a preview of the Governments evidence or legal theories." *Mitlof*, 165 F. Supp.2d at 569.

Here, the indictment, which charges defendant with possessing with intent to distribute fifty (50) grams of "crack" on or about August 17, 2006, is not "so general that they do not advise a defendant of the specific acts of which he is accused." *Perez*, 940 F. Supp. at 550. Additional information which Defendant requests, such as information regarding the questioning of his nephew and Defendant's post-arrest statements are already available to Defendant, for example in the search warrant affidavit which has been available to Defendant. Finally, additional information such as the names and phone numbers of individuals present at the time and place any of the "overt acts" occurred are the sort of information to which defendant is not entitled in a bill of particulars. *See Mitlof*, 165 F. Supp.2d at 569 ("evidentiary minutiae" and "wheres, whens and with whoms" are beyond the scope of a bill of particulars). Defendant's motion for a bill of particulars is therefore denied.

## I. Conclusion

For the reasons stated above, defendant's motions to suppress physical evidence and post-arrest statements are DENIED. Defendant's various motions to compel early discovery are DENIED. Defendant's motion to for a bill of particulars is DENIED.

*It is so ordered.*

Dated: White Plains, New York
     July 10      , 2007

_____
Stephen C. Robinson, U.S.D.J.

6